PHOENIX DUSTER & MANUFACTURING COMPANY, Respondent, v. LANDAU GROCERY COMPANY, Appellant.

St. Louis Court of Appeals, November 16, 1909.

APPELLATE PRACTICE: Equitable Defense: Fraud and Deceit: Conclusiveness of Court's Finding. In an action to recover the price of goods sold and delivered and to recover profits lost by reason of defendant's refusal to take part of the goods, where an answer was filed asking for a rescission of the contract providing for the sale of such goods, on the ground of misrepresentation and fraud, a finding by the trial court against defendant on such defense will not be disturbed on appeal, where there was evidence on both sides of the issue.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds,* Judge.

*Nagel & Kirby* for appellant.

(1) When the pleadings in a case present an equitable issue, the appellate court is not bound by the

findings of fact made by the chancellor, but it becomes the duty of the appellate court to examine che evidence and make its own findings of fact. Patterson v. Patterson, 200 Mo. 335; Zweigart v. Reed, 119 S. W. 960; Barrie v. Railroad, 119 S. W. 1020. (2) Appeals in equity cases are determined by a preponderance of the evidence, which the appellate court will weigh for itself, the verdict of a jury or finding of the chancellor on issues of fact being advisory merely. Hall v. Hall, 77 Mo. App. 600; Lewis v. Rhodes, 150 Mo. 498. (3) The clear preponderance of the evidence in the case at bar supported the equitable defense pleaded in the answer, *viz.,* that the signing of the contract was induced and procured by fraudulent misrepresentations as to the material facts; (a) that the Phoenix duster was a new article in the St. Louis market, not theretofore introduced in the St. Louis market; (b) that it was a good seller. (4) "Where the right to rescind a contract springs from subsequently discovered fraud, the defrauded party does not lose his right to rescind because the contract has been partly executed, and the parties cannot be fully restored to their former positions." Smith on Fraud, sec. 133; Wine Co. v. Brasher, 13 Fed. 595; Gatling v. Newell, 9 Ind. 572; Mason v. Bovet, 1 Denio 69; Myrick v. Jacks, 33 Ark. 425; Kelly v. Owens, 120 Cal. 502. (5) Where the inducing misrepresentation related to a fact, either peculiarly within the knowledge of the person making the representation, or of such a nature that the truth of the representation could reasonably be determined only by actual test of the article, then the fact that the defrauded purchaser uses or sells enough of the subject-matter to test the truth of the representations, will not prevent a rescission if he acts with reasonable promptness after discovering the fraud. Wine Co. v. Brasher, 13 Fed. 595. (6) In such a case equitable restitution will be decreed, and an accounting for the portion sold, to-

gether with a return of the portion unsold, will consti-
tute equitable restitution. Wine Co. v. Brasher, 13 Fed.
595; McGhee v. Bell, 170 Mo. 121. (7) The trial
court committed reversible error in not admitting evi-
dence to show that a sale of seven gross of the dusters
was not in fact an unreasonable or excessive amount
to ascertain in the St. Louis market whether the duster
was "a good seller," and "a new article."

*Lee W. Grant* and *P. B. Kennedy* for respond-
ents.

(1) The testimony of Fickett, for plaintiff, and
Louis Landau, for defendant, is directly opposed.
Both cannot be true. The court, therefore, had to be-
lieve either one or the other. He evidently believed
Fickett and disbelieved Landau. He had the witnesses
before him and could judge by their demeanor as to their
truthfulness. Where there is a direct and sharp con-
flict in the evidence before the trial court, the finding
of that court will not be disturbed. Strine v. Williams,
159 Mo. 582; Carter v. Dilley, 167 Mo. 564; Chance v.
Jennings, 159 Mo. 544; Culver v. Smith, 82 Mo. App.
390; Arn v. Arn, 81 Mo. App. 133. (2) The court must
be satisfied by the clearest evidence that the fraudulent
representations were made, and made under such cir-
cumstances as to show that the contract was founded
upon them. Bailey v. Smock, 61 Mo. 213; Dunn v.
White, 63 Mo. 181. (3) Even if Fickett had made the
alleged statement that the wire-handle duster had not
been sold before in this market, and this statement was
untrue, it must be shown that this was a material ele-
ment in the making of the contract. It was, in fact, col-
lateral only to the contract. It was not shown that the
previous sale of plaintiff's wire-handle duster interfered
with the sale of the wooden-handle duster. It is not
sufficient that the alleged representations should have
been false. Plaintiff must have rested the transaction

on the faith of them, and they must be material. Story, Equity Jur., sec. 191, cited in Wannell v. Kern, 57 Mo. 478; Bryan v. Hitchcock, 43 Mo. 527; Parker v. Marquis, 64 Mo. 38, 42; Hamilton v. Mallett, 8 Mo. App. 584; Nauman v. Oberle, 90 Mo. 666. (4) Representations that it was a good seller were not shown to have been relied on by Landau. Neither were the representations proven false. Even if the duster had not been a good seller, the representations would not be ground for rescinding the contract. Black v. Epstein, 93 Mo. App. 459.

GOODE, J.—Plaintiff is engaged in the manufacture of dusters of its own patent, of Manilla paper attached to handles either of wire or wood. The president of plaintiff, R. N. Fickett, called at defendant's place of business to sell defendant, which is engaged in the wholesale grocery business in St. Louis, some of the dusters. He sold defendant one hundred gross, seventy-five gross being shipped at once, but before the other twenty-five gross were shipped defendant countermanded the order on the ground the sale had been induced by false representations in these regards: First, that the dusters were a novel article and never had been sold before in St. Louis, and, second, "were good sellers." Some correspondence ensued between the parties regarding the transaction, but having failed to settle the dispute amicably, plaintiff instituted the present action in two counts, seeking in the first to recover $937.50, the purchase price of seventy-five gross of dusters actually shipped to defendant and received by it, and $250, the profit on the twenty-five gross which were not delivered. As instituted it was an action at law, but the answer filed by defendant was treated by both parties as converting the cause into one in the nature of a suit in equity. We will not say whether, in our opinion, the answer had this effect, being merely one to rescind the contract, but will treat the case as the parties did. The answer admitted the purchase of the dusters and set

up the contract was induced by fraudulent represen-
tations as stated, asked the court to decree its rescis-
sion and tendered to plaintiff payment for some seven
gross of dusters defendant had disposed of before it as-
certained the alleged fraud in the sale.   On the testi-
mony the court entered judgment for plaintiff, finding
against the defense of fraud.   Defendant appealed and
contends the judgment was against the weight of the
evidence and, as the suit is in equity, this court ought
to review the evidence and reverse it.   The main point
of fact at issue was whether Fickett represented the
dusters with wood handles, as all purchased by defend-
ant were, were a novelty and never had been sold in
St. Louis, as he asserted, or whether he represented
that neither those with wood handles nor those with
wire handles had been sold in the St. Louis market.
It is conceded dusters of this pattern with wood handles
had not been sold before in St. Louis and that those with
wire handles had for seven or eight years; and defend-
ant contends, in substance, the latter species had
proved so unsatisfactory that those with wood handles
did not find a good market.   Fickett testified the only
representation he made regarding the novelty of the
articles in St. Louis was that the dusters with wood
handles never had been sold there.   He testified fur-
ther he distinctly told Landau, the purchasing agent
of defendant, the wire-handled dusters had been "va-
riously" sold in St. Louis.   On the other hand the tes-
timony for defendant tends to prove Fickett's repre-
sentation related to both dusters, and that when he
made it he had both kinds in his hands, was striking
them against a chair to show how they worked, and
while he did this said the dusters were a novelty,
meaning both of them, and never had been sold before
in St. Louis.   Defendant wished to obtain an exclusive
market in St. Louis and bargained for this for four
months.   The contract between the parties, written on

a blank form, with insertions and interlinings in pencil, is set forth:

"This contract made this 7th day of Oct., 1907, between Phoenix Duster & Manufacturing Co., of Atlanta, Ga., party of the first part, and Landau Grocery Co., of . . . party of the second part, witness:

"Said party of the first part has this day sold party of the second part 100 gross of their 5 1-2 oz. Phoenix Patent Dusters, at $12.50 per gross, F. O. B. Atlanta, Ga. The said party of the first part agreeing to sell or retail but no other wholesale houses in said St. Louis for 4 months from this date. (sic.)

"Party of the second part agrees in view of the concessions made in this contract to push sale of said dusters, and should they fail to do so then said party of the first part is privileged to sell other firms.

"It is distinctly understood that there are no other conditions, verbal or otherwise, not named in this contract. No agent or other person is authorized to make any statements or agreements that will affect this contract unless they are embodied in it in writing. It is further understood that this contract is accepted by party of the first part contingent to strikes, fires or inability to get stock.

"75 Gro. once Bal. when order out.

"1 Gro. Grats.

"(Signed)            LANDAU GROCERY CO.,
Per L. Landau; Prest. Phoenix Duster & Manufacturing Co."

If the number of witnesses must control the decision of the point, the finding of the court below as to the representation made by Fickett would be against the weight of the evidence, for two or three witnesses testified the facts were as contended by defendant, whereas Fickett's testimony that his statement related only to the wood-handled dusters and he advised defendant the wire-handled dusters "had been previously sold in St.

Louis " was uncorroborated by any other witness. But it is to be remembered the witnesses who testified for defendant were its officials and employees, and we are not so convinced their narrative of the affair was correct as to overrule the court below, who had the advantage of seeing the manner of the witnesses on the stand. The discreeter policy in this cause is to defer to the judgment of the chancellor, as we find indications in the record that he weighed the testimony rightly. The impression we derive is that defendant became dissatisfied because it had overbought, as a panic came on in October, 1907, and money was scarce; the St. Louis banks refusing to cash checks. Defendant did not ask rescission of the contract when it first discovered it had been imposed on, as it now alleges, but in a letter dated October 30, 1907, one week after the contract was made, said, in effect, that had defendant known of the prior sales in St. Louis it would not have bought so many. This portion of the letter reads as follows: "Under the circumstances, we cannot use this large quantity. We would not have bought this large quantity, but he insisted that we had the exclusive sale here and same was never introduced here before, and same would be sold in thirty days. Had he told us the truth, we would have taken five gross, and we are willing to accept that many and we hold the balance subject to your order. If this is satisfactory to you, we will remit for the five gross, and we will keep the balance here and you can dispose of them and forward them from here wherever you placed them, as we will not accept them since your representative had the audacity to come to our office and lie to us the way he did." It was not until November 12th defendant declared the contract rescinded. On consideration of the whole evidence we will leave the decision as the court below rendered it.

The representation regarding the duster being a good seller was not proved to have been either false or

fraudulent. Defendant sold six or seven gross of the dusters in a week, and at the same rate of sale would have disposed of about all it bought during the four months it was granted an exclusive market.

The judgment is affirmed. All concur.